IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:17-CV-168-GCM-DCK

| ANGEL D. McKINNEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 9) and "Defendant's Motion For Summary Judgment" (Document No. 13). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" (Document No. 9) be <u>denied</u>; that "Defendant's Motion For Summary Judgment" (Document No. 13) be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.   BACKGROUND

Plaintiff Angel D. McKinney ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about December 19, 2013, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, <u>and</u> for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning on September 13, 2011.

(Transcript of the Record of Proceedings ("Tr.") 233, 236). Plaintiff amended her alleged onset date to March 1, 2013 in her pre-hearing memorandum. (Tr. 7, 424).

The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about May 20, 2014, and again after reconsideration on July 31, 2014. (Tr. 7, 129, 133, 139, 144). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.
> We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.
> It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 139).

Plaintiff filed a timely written request for a hearing on September 14, 2014. (Tr. 7, 148-149). On June 15, 2016, Plaintiff appeared and testified at a hearing before Administrative Law Judge Michael J. Davenport (the "ALJ"). (Tr. 7, 33-58). In addition, Charlie A. Edwards, a vocational expert ("VE"), and Anna R. Hamrick, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on July 1, 2016, denying Plaintiff's claim. (Tr. 4-21). On July 1, 2016, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on April 28, 2017. (Tr. 28-30). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 28).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on June 27, 2017. (Document No. 1). On July 6, 2017, this case was referred to the undersigned Magistrate Judge.

Plaintiff's "Motion For Summary Judgment" (Document No. 9) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 10) were filed November 6, 2017; and "Defendant's Motion For Summary Judgment" (Document No. 13) and "Memorandum Of Law In Support of Defendant's Motion For Summary Judgment" (Document No. 14) were filed February 20, 2018. "Plaintiff's Response To Defendant's Motion For Summary Judgment" (Document No. 15) was filed March 5, 2018.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability," as that term of art is defined for Social Security purposes, at any time between March 1, 2013, and the date of the ALJ's decision.[1] (Tr. 7). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1)  whether claimant is engaged in substantial gainful activity - if yes, not disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fourth step that Plaintiff was not disabled because she could perform her past relevant work as it is generally performed. (Tr. 19). In addition, the ALJ made alternative findings at step five that there were other jobs in the national economy that Plaintiff could also perform. (Tr. 19-20).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since March 1, 2013, her alleged disability onset date. (Tr. 9). At the second step, the ALJ found that obesity, fibromyalgia, lumbar degenerative disc disease, depression, and anxiety were severe

5

impairments.[2] (Tr. 9-10). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 10).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the limitation that "she [can] perform only simple routine jobs and job tasks." (Tr. 11). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p" Id. Moreover, the ALJ stated that he "also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p and 06-3p." Id.

At the fourth step, the ALJ held that Plaintiff could perform her past relevant work as a cashier and telephone operator. (Tr. 19). The ALJ further opined that "[a]lthough the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." Id. Therefore, at the fifth and final step, the ALJ concluded, based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity," that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20).

Specifically, the VE testified that according to the factors given by the ALJ, Plaintiff could perform the requirements of occupations such as sorters/laundry, assemblers, and garment folders. (Tr. 20, 55-56). The ALJ held that Plaintiff was not under a "disability," as defined by the Social

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

Security Act, at any time between March 1, 2013, and the date of the ALJ's decision, July 1, 2016. (Tr. 20-21).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to identify and obtain a reasonable explanation for apparent conflicts between the VE testimony and the Dictionary of Occupational Titles ("DOT"); (2) the ALJ erred in assessing Plaintiff's RFC; and (3) the ALJ rejected a treating therapist's opinion without giving legally sufficient reasons for doing so. (Document No. 10, p.5). The undersigned will address these allegations below.

**A. Dictionary of Occupational Titles**

First, Plaintiff argues that the ALJ accepted testimony from the VE that appears to conflict with the DOT, without obtaining an explanation. (Document No. 10, pp. 5-12). Plaintiff notes that the ALJ limited her to "only simple routine jobs and job tasks," but also found that she could do work that according to the DOT required Reasoning Levels 2 and 3. (Document No. 10, p. 8) At Reasoning Level 3 were the jobs of: cashier and telephone quotation clerk; and at Reasoning Level 2 were the jobs of: fast food worker, sorter, and assembler. Id.; see also, (Tr. 19-20, 54-56). Plaintiff seems to contend that the ALJ erred because there is an apparent conflict with a RFC limited to simple and routine work tasks and jobs that require Reasoning Level 3; as well as a conflict between a RFC limited to one-to-two step instructions and jobs that require Reasoning Level 2. (Document No. 10, pp. 9-10) (citing Henderson v. Colvin, 643 Fed.Appx. 273, 276-77 (4th Cir. 2016).

Plaintiff then goes on to suggest that there is an apparent conflict between simple, routine and repetitive tasks and Level 2 Reasoning, because other district courts invoking Henderson "found an apparent conflict between a Reasoning Level of **2 or 3** and a residual functional capacity

limitation to simple, routine, and repetitive tasks." (Document No. 10, pp. 10-11) (citations omitted).

Plaintiff also contends the ALJ erred because there is an apparent conflict because the cloth/garment folder job (DOT # 589.687-010) identified by the VE is a *medium* level job and the ALJ limited Plaintiff to *light* exertional work. (Document No. 10, pp. 11-12).

In response, Defendant argues that the ALJ properly relied on the VE's testimony. (Document No. 14, pp. 5-6). Defendant asserts that even if Level 3 Reasoning jobs were unavailable to Plaintiff, there is ample caselaw that jobs involving Level 2 Reasoning do not conflict with a limitation to simple, routine jobs and tasks. Id. Defendant also notes that the ALJ here did not limit Plaintiff to one-to-two step instructions. Id.

The undersigned is not persuaded the ALJ erred here. In this case, as Plaintiff acknowledges, the ALJ identified jobs requiring a Reasoning Level of 2. See (Document No. 10, p.8) (fast food worker, sorter, and assembler). Apparently, both the "sorter" and "assembler" jobs involve light work and a Reasoning Level of 2; moreover, the VE testified that there are 1,000,000-plus of these jobs in the national economy. (Tr. 55-56); see also (Document No. 10, p. 8). Based on Defendant's argument and the following instructive authority, the undersigned is not persuaded there is an error here where the VE and ALJ have identified occupations requiring Level 2 reasoning.

This would have been a closer call if only Level 3 reasoning jobs had been identified for Plaintiff. A recent decision by the Honorable Robert J. Conrad, Jr. provides helpful guidance here:

> **Courts are split on whether an apparent conflict exists between a limitation for simple, routine, and repetitive tasks and an occupation that requires a Reasoning Level 3, although the Fourth Circuit has not addressed the issue**. Compare Zavalin v. Colvin, 778 F.3d 842, 846–47 (9th Cir. 2015) (finding no apparent conflict between simple, routine, and repetitive tasks and a

8

> Reasoning Level 3), and Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (same) with Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (per curiam) (finding an apparent conflict between simple, routine, and repetitive tasks and a Reasoning Level 3). **Indeed, there is not even consensus within this district**. Compare Clontz v. Astrue, 2:12-CV-00013-FDW, 2013 WL 3899507 (W.D.N.C. July 29, 2013) (finding no apparent conflict between simple, routine, and repetitive tasks and a Reasoning Level 3) with Adkins v. Berryhill, 1:15-CV-000001-RLV, 2017 WL 1089194 (W.D.N.C. Mar. 21, 2017) (finding an apparent conflict between simple, routine, and repetitive tasks and a Reasoning Level 3). After review of the relevant decisions, the Court is persuaded by the thorough reasoning in Adkins and Mullis v. Colvin that an apparent conflict does in fact exist—absent facts identified by the ALJ resolving the conflict—between a limitation to simple, routine, and repetitive tasks a person's ability to perform an occupation requiring Level 3 reasoning. 2017 WL 1089194, at *4–5 (discussing the rationale and reasoning behind the different federal circuit court opinions on the issue before concluding that the cases that found a conflict between occupations requiring Reasoning Level 3 and an RFC limitation of simple, routine, and repetitive tasks are more persuasive); No. 1:11-CV-22, 2014 WL 2257188, at *1 (M.D.N.C. May 29, 2014) (collecting and reviewing recent decisions from districts within the Fourth Circuit before concluding that a conflict exists). Accordingly, the Court finds that in this case an apparent conflict exists between the VE's testimony that Plaintiff can perform the occupation of shipping-and-receiving weigher and the Plaintiff's RFC restriction of simple, routine, repetitive tasks. Nothing in the record resolves this conflict.

Lorch v. Berryhill, 3:16-CV-076-RJC, 2017 WL 1234203, at *5 (W.D.N.C. Mar. 31, 2017) (emphasis added). As noted above by Judge Conrad, courts are split, including within this district, on whether an apparent conflict exists between a limitation for simple, routine, and repetitive tasks and an occupation that requires a Reasoning Level 3. Id.; see also, Keller v. Berryhill, 5:17-CV-001-FDW, 2017 WL 3710085, at *3 (W.D.N.C. Aug. 28, 2017) and Thacker v. Astrue, 3:11-CV-246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) adopted by 2012 WL 380052 (W.D.N.C. Feb. 6, 2012) ("There was no apparent conflict between the ALJ's RFC limitation to

9

simple, routine, repetitive, unskilled work and the reasoning level three jobs identified by the V.E.").

However, there appears to be less dispute regarding Reasoning Level 2. For example, the undersigned observes that the Eastern District of North Carolina, citing a decision by this Court, has held that Reasoning Level 2 is not inconsistent with simple work, as follows:

> Accordingly, the court found that a limitation to simple, routine and repetitive tasks "is not inconsistent with jobs at the DOT reasoning development level 2." Id. This court finds the Burnette court's reliance on Meissl proper; thus, Claimant's argument is without merit. See Pippen v. Astrue, No. 1:09–CV–308, 2010 U.S. Dist. LEXIS 102460, at *18–19, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010) (finding **a reasoning level of two is not inconsistent with a limitation to simple work** and observing that "[a]lthough reasoning level two requires the understanding to carry out detailed instructions, 'it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning'") (quoting Flaherty v. Halter, 182 F.Supp.2d 824, 850 (D.Minn. 2001)).

Taylor v. Astrue, 2011 WL 1599679, at *13 (E.D.N.C. Mar. 23, 2011), adopted by, 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011) (emphasis added).

The undersigned further notes that the Middle District of North Carolina has reached the same conclusion:

> a job rated at reasoning level two requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." A level two job also requires the worker to "[d]eal with problems involving a few concrete variables in or from standardized situations." Id.
>
> Plaintiff cites a number of non-binding cases holding that a reasoning level of two is per se inconsistent with a limitation to simple, routine, and repetitive tasks. (Pl.'s Br. at 11–12.) However, **the majority of the courts to have considered the issue instead have found that** such holdings grossly oversimplify the relationship between the SSA's reasoning scale and the far more nuanced DOT scale, and have concluded that **limitation to simple, routine, and repetitive tasks does not conflict with a reasoning level of two**.

10

Durham v. Colvin, 2015 WL 457939, at *11–12 (M.D.N.C. Feb. 3, 2015) (emphasis added); see also Shore v. Astrue, 2013 WL 438122, at *5 (M.D.N.C. Feb. 5, 2013).

Finally, the undersigned notes that under circumstances similar to the instant case, where a plaintiff was limited to simple, routine, repetitive tasks, and Reasoning Level 2 jobs were identified, that this Court has found no error where "the VE identified at least two positions that Plaintiff was capable of performing, and the ALJ reasonably relied upon this testimony in making the determination that Plaintiff was not entirely disabled from all work." Vallejo v. Astrue, 3:10-CV-445-GCM-DCK, 2011 WL 4595259, at *13-14 (W.D.N.C. Aug. 4, 2011), adopted by, 2011 WL 4597348 (W.D.N.C. Sept. 30, 2011); see also Hicks v. Astrue, 5:11-CV-182-RLV-DSC, 2012 WL 6840580, at *3 (W.D.N.C. May 22, 2012) (citing Thacker, 2011 WL 7154218, at *3-4) ("This Court has recently held that there is no apparent conflict between an RFC limitation to simple, routine, repetitive work and Reasoning Level two or three jobs. . . . Other courts have held that occupations with a DOT Reasoning Level of two are not inconsistent with an RFC limiting the claimant to performing simple, repetitive tasks."). In Thacker, this Court observed that "Plaintiff concedes that this Court has found levels one and two to be consistent with a limitation to simple, routine, repetitive tasks." 2011 WL 7154218, at *4. Notably, Plaintiff did not cite Keller, Vallejo, or Thacker, much less attempt to distinguish those decisions from the instant case, even though Plaintiff's counsel also represented the plaintiffs in those cases.

Based on the foregoing, the undersigned is satisfied that the ALJ did not commit reversible error here in his consideration of the VE testimony and the DOT.

## B. RFC Assessment

In the second assignment of error, Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. (Document No. 10, 12-22). Among other things, Plaintiff contends that in determining

11

Plaintiff's RFC, the ALJ failed to properly account for Plaintiff's moderate difficulties in concentration, persistence, or pace. (Document No. 10, pp. 13-17). Specifically, Plaintiff asserts that despite the ALJ's finding at step three of the disability analysis that Plaintiff suffered moderate difficulties in concentration, persistence, or pace, the ALJ neither included a limitation in Plaintiff's RFC that addresses this moderate difficulty, nor sufficiently explained why this moderate difficulty does not translate into a limitation in Plaintiff's RFC. Id. In Plaintiff's view, the ALJ's decision thus runs afoul of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015):

> we agree with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. As [the claimant] points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

See (Document No. 10, pp. 14-15) (quoting Mascio, 780 F.3d at 638). Plaintiff contends that the ALJ failed to adequately address Plaintiff's ability to stay on task. (Document No. 10, pp. 15-17). In addition, Plaintiff contends that the ALJ erred pursuant to Mascio by failing to discuss her mild limitations in social functioning. (Document No. 10, pp. 17-22).

In response, Defendant argues that the ALJ's RFC finding was proper. (Document No. 14, pp. 6-7). Addressing Plaintiff's contention that the ALJ's RFC finding failed to properly account for Plaintiff's moderate difficulties in concentration, persistence, or pace, Defendant asserts that "the ALJ's finding with regard to CPP clearly addressed Plaintiff's ability to stay on task." (Document No. 14, p. 6). In making this assertion, Defendant points to language in which the ALJ directly addressed Plaintiff's moderate difficulties with concentration, persistence or pace, and found that Plaintiff "can sustain focused attention and concentration sufficiently long enough to

permit the timely and appropriate completion of tasks commonly found in routine and repetitive, not detailed or complex, work settings." (Document No. 14, pp. 6-7) (quoting Tr. 10).

Likewise, Defendant asserts that the ALJ "clearly explained the extent of Plaintiff's social limitations." (Document No. 14, p. 7). Defendant submits there was no error because "the ALJ found that Plaintiff 'is able to initiate social contacts, communicate clearly, participate in group activities and demonstrate cooperative behaviors with little difficulty.'" Id. (quoting Tr. 10).

Plaintiff replies that Defendant's assertion is unpersuasive because the ALJ's language that Defendant quotes comes from step three of the ALJ's disability analysis—not from the RFC assessment used at steps four and five of the disability analysis—and because the ALJ said nothing about Plaintiff's ability to stay on task for a full workday. (Document No. 15, pp. 2-3) (citing Mascio, 780 F.3d at 637; SSR 96-8p). In making this assertion, Plaintiff notes that under Mascio, an ALJ must not only identify functions that a claimant can perform but also discuss a claimant's ability to perform them for a full workday. (Document No. 15, p. 3); see also 780 F.3d at 637. In addition, Plaintiff notes that under SSR 96-8p, "limitations identified in the 'paragraph B' and 'paragraph C' criteria [from step three of the disability analysis] are not an RFC assessment." (Document No. 15, p. 3) (quoting SSR 96-8p).

The undersigned agrees with Defendant. In addition to the cited statements of the ALJ at Tr. 10, the ALJ further opined that:

> In assessing the claimant's mental abilities, Dr. Fiore opined **she could understand and follow simple and moderately complex work-related tasks**. He stated her **attention span was below average, but was adequate to perform simple repetitive tasks for typical periods of time**. He noted she was capable of relating to fellow workers and supervisors under normal circumstances. He stated her tolerance for emotional stress was reduced, but would probably only mildly interfere with her work performance (Exhibit 4F).
> . . .

13

the undersigned recognizes the claimant has some limitations as the result of anxiety and depression; however, the record fails to indicate a mental impairment, or impairments to preclude all work activity. . . . The claimant is able to tend to personal needs, take care of her children, do her homework and go to school. She does simple household chores, takes care of pets, is able to make simple meals, goes outside daily, drives and goes out independently, goes shopping, counts money and handles accounts, reads, sews, draws, plays cards, spends time with others, **is able to pay attention, is able to follow simple instructions, and is able to get along with others despite ongoing impairments**. The claimant would have some workplace limitations; however, she [] is not markedly limited in overall ability to function at this time. The undersigned has fully considered the claimant's mental impairments in limiting her to simple routine jobs/job tasks.

. . .

The **opinion of Dr. Fiore is given great weight**, as findings are consistent with the claimant's expected ability to function. Therefore, at this time, the claimant **does appear to be capable of performing simple routine jobs and job tasks**. The undersigned has also considered the claimant's testimony and function report in reaching the above-stated residual functional capacity.

In sum, the evidence suggests that the claimant is limited but is able to perform at least some type of work activity, and in this case, simple routine light work. This conclusion is supported by objective medical evidence outline above. While the claimant may not be able to perform all types of work activity, she could nonetheless perform work within the residual functional capacity stated above. Her allegations to the contrary are not found to be supported by the record as a whole.

(Tr. 16, 18, 19)

Based on the foregoing, the undersigned is satisfied that the ALJ provided adequate explanation, supported by substantial evidence, to support his conclusions regarding Plaintiff's RFC.

**C. Treating Therapist Opinion**

14

Finally, Plaintiff contends the ALJ erred by failing to give legally sufficient reasons for rejecting the opinions of Plaintiff's treating therapist Joseph Stertz, Jr. ("Stertz"), LCSW-A. (Document No. 10, pp. 22-24). Plaintiff notes that the ALJ rejected the licensed clinical social worker's diagnosis of post-traumatic stress disorder ("PTSD") and bipolar disorder. (Document No. 10, p.22) (citing Tr. 10). According to Plaintiff, the ALJ's rejection of Stertz's opinions is based only on speculation, and the ALJ thus failed to provide sufficient reasons, such as medical evidence or opinions, to support his conclusion. (Document No. 10, pp. 23-24).

In response, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff has neither PTSD or bipolar disorder. (Document No. 14, p.7). Defendant first notes that Mr. Stertz opined that Plaintiff had PTSD, but there does not appear to be any evidence that he opined she had bipolar disorder. (Document No. 14, p. 7 n. 4) (citing Tr. 16, 768-769, 773, 777). Defendant then notes that "Plaintiff underwent a psychological evaluation by Dr. Michael Fiore in April 2014," and that Dr. Fiore specifically concluded that Plaintiff "does not appear to meet diagnostic criteria for either bipolar disorder or posttraumatic stress disorder." (Document No. 14, pp. 7-8) (quoting Tr. 554); see also, Tr. 16 (citing Tr. 551-556).

Defendant further argues that even if Plaintiff had these alleged mental conditions, her extensive daily activities demonstrate that her alleged mental conditions would not likely affect a finding that she was not disabled. (Document No. 14, p. 8) (citing Tr. 10-12, 333-340).

In reply, Plaintiff asserts that Defendant is engaging in "*post-hoc* rationalizations for the ALJ's failure to properly explain the basis for rejecting Mr. Stertz's opinion." (Document No. 15, p. 4). Plaintiff contends that the "ALJ failed to identify any medical evidence of record in support of his rejection of these opinions." Id.

15

The undersigned respectfully disagrees with Plaintiff's argument. Contrary to Plaintiff's position, the undersigned finds that the ALJ cited evidence in the record from Dr. Fiore, whose opinion he gave great weight, that provides an ample basis for rejecting Mr. Stertz's opinions. See (Tr. 16, 18-19, 551-556). Notably, Plaintiff does not provide citation in either brief to the evidence she relies on from Mr. Stertz, or otherwise; nor does she attempt to refute Defendant's argument that Mr. Stertz never found that Plaintiff had bipolar disorder. See (Document No. 10, pp. 22-24 and Document No. 15, p. 4).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 9) be **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 13) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service

of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: July 20, 2018

David C. Keesler
United States Magistrate Judge